The court will proceed to the fifth case, Glover v. Carr. Mr. Reardon. Good afternoon, your honors. May it please the court. Connor Reardon for the plaintiff appellant, Ricardo Glover. Even the defendants don't defend the district court's reasoning in refusing to permit Mr. Glover to add claims against the one prison official responsible for the constitutional violation, Dr. Ryan Holzmacher. Instead, they seek affirmance on alternative grounds, raising two arguments. This court should reject both of them. Mr. Glover did not unduly delay in seeking leave to amend, and Dr. Holzmacher would not be entitled to qualified immunity on the one ground raised by defendants, whether Mr. Glover suffered from a serious medical condition. I'll start with the issue of amendment. At the relevant time during the proceeding below, Mr. Glover was proceeding pro se and litigating his case from prison. This court has repeatedly recognized that such litigants face substantial hurdles in pressing their cases, and so has said that district courts have a special responsibility to help ensure that the claims are heard on the merits. In particular, the court has stressed that pro se inmates can face substantial hurdles in identifying the officials responsible for constitutional violations, and so has repeatedly said that refusal to permit a pro se civil to amend a complaint to add claims against responsible officials is widely recognized as an abuse of discretion. Nothing about this case suggests that it should not be governed by that general principle, certainly not the district court's reasoning, which the defendants don't defend. Instead, the defendants focus on delay, but that argument fails on both the law and the facts. On the law, the defendants identify a handful of cases in which delay was held to justify denial of leave to amend, but each of those cases involves counseled work here. We say that it's an abuse of discretion to refuse to permit a civil rights plaintiff proceeding pro se to add claims against the right defendants. The defendants can't defeat that argument by reference to cases involving counseled plaintiffs, so that's the law. On the facts, Mr. Glover delayed just over two weeks between learning of the facts necessitating amendment and moving to amend. Nothing in the cases cited by defendants suggests that even in the case of a counseled litigant, a two-week delay is sufficient to qualify as undue. And in addition, as we explained in our brief, delay alone is not enough. It has to be coupled with some other justification like prejudice. On the facts, a showing of prejudice is wholly absent. Unless the court has questions on the issue of amendment, I'll move on to qualified immunity. Can I ask you, just to make sure we've got jurisdiction here, can you just tell us what whether he wants an injunction? He is not in custody. His long-term health was compromised by the denial of the Cialis prescription, and he does not want an injunction. He does not want an injunction, Your Honor. And so I think for those reasons, this court's jurisdiction is proper. Would you agree, Mr. Reardon, that the district judge's rationale for granting summary judgment for everybody else other than Dr. Holtzmacher was correct? We're not challenging personal involvement as to the initial name of the defendants. On the issue of qualified immunity, I'd like to start by emphasizing just how narrow the question before the court is. A plaintiff who shows the existence of a serious medical condition doesn't necessarily have a winning Eighth Amendment claim. In this context, where the serious medical condition is based on the recommendation of a specialist outside the prison, that plaintiff has precisely half of an Eighth Amendment claim, and frankly, it's the easy half. All the prescription does is trigger an obligation on the part of a prison physician to exercise independent medical judgment in deciding whether the outside recommendation is appropriate or not. In effect, all it does is trigger an obligation on the part of the prison doctor to act like a doctor, which is a modest requirement. So as for the actual application of qualified immunity, yes, we need a case putting Dr. Holtzmacher's statement was unlawful. What we don't need, what the Supreme Court in this case have repeatedly said we don't need, is a mirror image case, a factually identical case, which means that we don't need a case about erectile dysfunction. Given that, I think that Gutierrez and the cases following it take us all the way, take us the entire distance that we need to go. Gutierrez, after adopting a two-pronged disjunctive test for the existence of a serious medical condition, with the first prong being whether a physician has concluded that the condition mandates treatment, assessed the existence of such a condition by asking whether the two doctors at issue in that case had prescribed treatment for the plaintiff and found that they had. The court then said these physicians clearly regarded the plaintiff as having a condition mandating treatment because when the plaintiff went to see them about his condition, they repeatedly prescribed treatment, including antibiotics and special baths for his cyst. That's it. That's the end of the inquiry. And as we point out at page 24 in our brief, this court has repeatedly reaffirmed that standard from Gutierrez. Now, the defendants never explain why, given the existence of that clear categorical rule, someone in Dr. Holzmacher's position could have assessed the facts of this case and concluded that Mr. Glover did not suffer from a serious medical condition. Instead, they point to other cases involving erectile dysfunction, but none of them help them at all here. The McTavie case in particular, which is the one published court of appeals case that they cite comes from the Third Circuit. And McTavie takes an approach to qualified immunity that this court has repeatedly said is flatly incorrect. In the Eighth Amendment context, this court has held that you don't do qualified immunity by proceeding disease by disease or injury by injury, which is precisely what the McTavie court did. The McTavie court said, do we have a Supreme Court case on erectile dysfunction? No. Do we have a Third Circuit case on erectile dysfunction? No. Then qualified immunity is appropriate. In this court of appeals, that's not the way the inquiry is conducted. Now, before moving on, I'd like to address one issue and explain why it does not help the defendants in this case. In Dr. Holzmacher's declaration, he suggests that there may be reasons why it's appropriate to deny a Cialis prescription in these circumstances. But I think that it's important to take Dr. Holzmacher's declaration for what it is and understand its limits. The relevant portion of the declaration is at 198 in the JA. What this document purports to be, all this document purports to be, is a post hoc rationalization explaining why it's OK to not have Cialis on the formulary. It does not purport to shed any light on Dr. Holzmacher's decision at the time that he made the non-formulary drug request. Nor does it... Well, if prisoners have an interest in not promoting sexual behavior on the part of inmates, to your knowledge, does Cialis have an impact on a patient's sex drive? And would that be a relevant factor for a prison to consider? As far as I understand the record, Your Honor, we know that Cialis can help a patient in maintaining an erection, but I don't know that there's anything in the record suggesting that it has an effect on the patient's sex drive. And as I understand the arguments that are advanced by the defendants, there's no suggestion that there are institutional needs in prison that would permit the prison to do that. Administrative concerns overrode their ordinary obligation to provide adequate medical care to inmates. And adequate medical care... There can be potentially dangerous side effects to medications like Cialis. Is a prison infirmary equipped to handle those side effects? Well, Your Honor, I think that a prison infirmary is set up in order to provide adequate medical care to prisoners. And there's nothing in this Court's case law that suggests that in the realm of health care for prisoners, sexual health care should be categorically closed off. And of course, if Cialis did result in adverse side effects that were for some reason particularly undesirable in the prison context, then those medical concerns could be taken into account by a prison physician like Dr. Holtzmacher. This is precisely why we require prison physicians to exercise their independent medical judgment once the existence of a serious medical condition is shown. Does Dr. Holtzmacher's affidavit look to you like a description of a medical judgment or a policy judgment about providing erectile dysfunction treatment in prison generally? So, I don't think that it looks like a medical judgment in the way that this Court has used that phrase. At most, I think that Dr. Holtzmacher's declaration suggests potential reasons for the existence of a generally applicable policy that does not permit inmates to have Cialis. But it does not represent a medical judgment in the sense of the independent exercise of medical considerations taking into account the patient's particular circumstances. Unless the Court has further questions at this time, I'll reserve the balance of my time. Thank you, Mr. Airden. Thank you. Ms. Kekauver? Good afternoon. I'm Wisconsin Assistant Attorney General Carla Kekauver, and I represent the defendants' appellees, who are several Wisconsin prison officials. As opposing counsel alluded to, the issues on appeal have been significantly narrowed through the briefing in this case, so that the only issue before the Court is whether the District Court abused its discretion in denying Mr. Glover's request to add Dr. Holtzmacher as defendant. The record here supports the District Court's decision because Mr. Glover unduly delayed in filing his request, the request would cause prejudice to the defendants, and because any amendment would be futile as Dr. Holtzmacher would be entitled to qualified immunity. Starting with delay, Mr. Glover waited until the middle of summary judgment briefing, which was almost eight months after the case began, to file his first request to amend. And this delay was the result of his own actions. There was a long delay while he refused to sign a medical release. The defendants first requested that release in September 2016, but he didn't sign a HIPAA-compliant release until January of 2017. Why not just ask the District Judge for an order compelling... I don't understand all this fussing about the releases. The District Judge has the power to just order this. That's correct, although when the plaintiff and the patient are one and the same as here... And if he... or if he doesn't sign, dismiss the case. That's exactly right, and the Court allowed him numerous opportunities to proceed and to sign the medical release. Four months, there was back and forth with counsel and with the Court trying to get a valid medical release signed, and Mr. Glover refused and then ultimately had a very narrow release. Obviously, he was difficult to deal with. That doesn't necessarily, though, justify this remedy. This problem about access to medical records, frankly, is mystifying to me, given the District Judge's power to manage discovery and to dismiss the case if the plaintiff is non-compliant. At the time that Mr. Glover filed his request to amend, the District Court was not... it was not an abuse of discretion for the District Court to not give Mr. Glover yet another chance to either sign a medical release or proceed or to order, over his objection, the submission of medical records. What prejudice would there be allowing Mr. Glover to name Dr. Holzmacher? Judge Adelman can take appropriate steps, you know, if and when there's a problem with access to Mr. Glover's medical records, but we don't even know if there will be such a problem. Well, Dr. Holzmacher, as to the medical record, the prejudice to Dr. Holzmacher, the case would have to start over again, as to Dr. Holzmacher. Yeah, but everybody else is out of it, right? Well, this was in the middle of summary judgment, so we didn't know that at the time, but yes, there might have been, you know, we don't know what would have happened. There may have been some delay to the existing defendants, and then, you know, delay to the judicial system. These are problems that are just inherent, though, in the system of individual liability under Section 1983, and the challenge most pro se plaintiffs have, first in figuring out how that works in general, and then figuring out who's the right person. And until Holzmacher signs this declaration that says, this was my call, how was the plaintiff supposed to have figured this out? Well, that's correct. He filed discovery at the soonest opportunity. As soon as he signed that medical release, he submitted a request for discovery, asking all the right questions, and the defendants provided all the information he needed one month later. You've argued that he saw some documents, you provided documents in February that showed he should have added Dr. Holzmacher. Correct. What did those documents look like? What did they say that he should have figured out? Well, the three main things that he asked that were the appropriate questions to ascertain the correct defendant were, who is responsible for placing medications on the formulary? And the defendants responded that that's the Pharmacy and Therapeutics Committee, and they listed all the members of that committee, which included the medical director, Dr. Holzmacher. So, would all members of the committee be appropriate defendants in the case? Possibly, if that's the claim he filed, but we don't know the exact claim that he's intending to file because there was no amended complaint. The second question he asked was, who's responsible for admitting or denying non-formulary requests? And the defendants provided that information as well, but that's the BHS medical director. Is that an interrogatory answer? Correct. Third, he asked for a copy of the form denying his non-formulary request with the name of the person who denied it, and defendants submitted that form with Dr. Holzmacher's electronic signature clearly at the bottom. And this wasn't the needle in the haystack situation that opposing counsel suggests, because each answer had document Bates number pinpoints. Do we have those discovery responses in our record? They are in the record. Thank you. I don't have the site. I think it's... Sorry, I don't have the site right now. Okay. Who would represent Dr. Holzmacher if he's at it? Well, Dr. Holzmacher is no longer an employee at DOC, but the Department of Justice would likely represent him. And so it's a little hard to see a lot of prejudice in that direction. Well, again, with the medical records, neither Dr. Holzmacher nor the Department of Justice could see any additional medical records or obtain those without the medical release. Or without a court order. Or court order over Mr. Glover's objection. This is the most solvable problem I've seen in a long time. Again, we're looking at the abuse of discretion standard of review. And the discretion was not exercised on this basis. Well, moving on to futility. So despite the delay in prejudice, moving on to futility, any request to amend the complaint to add Dr. Holzmacher would be futile because Dr. Holzmacher would be entitled to qualified immunity. There is no case that clearly establishes erectile dysfunction as a serious medical need requiring treatment. Do we need to reach qualified immunity before he's even in the case? I mean, isn't that an argument for him to make at the appropriate time? It would be, but in this situation it's tied to futility. And the case under the abuse of discretion standard, the court can affirm on any ground that's supported by the record. And here, futility would be one of those grounds. On a discretionary ground? Ordinarily, when we're doing abuse of discretion review, we focus on the reasons the judge actually gave rather than imagining ways that he could. Let me put it a different way. Would it have been an abuse of discretion, in your view, to have allowed the amendment in this case along with orders to make sure that there was full access to all needed medical records immediately? Perhaps not, but again, the court didn't address futility, and that would be certainly something then that Dr. Holzmacher could bring up, the qualified immunity defense. You don't want us to decide qualified immunity adversely to him at this point, do you, before he's in the case? That's correct. But as far as futility goes, I think that is a basis to affirm the district court's decision. The court didn't address qualified immunity for the current, the existing defendants, because those defendants were dismissed on personal involvement grounds. But in cases like Perion, the court did address alternative grounds, especially when the district court's decision was insufficient or there wasn't enough information to understand how the court had decided. So I think futility is an appropriate inquiry at this point, and McTobie v. Schism, which is a Third Circuit case, has facts that are very analogous to this case, where after prostate surgery an inmate was diagnosed with sexual dysfunction and his outside-the-prison doctor prescribed a medication for that problem and his in-the-prison doctors denied that medication. The district court in that case defined the right very broadly as a right to treatment of a serious medical need or the right to procreate and found that there was no qualified immunity. But the Third Circuit said that that defined the right too broadly and that instead it had to be defined as whether prison officials are obligated to treat conditions resulting in impotence or infertility, such as retrograde ejaculation or erectile dysfunction. So disease by disease? Not disease by disease, but that there have to be closely analogous cases. And Gutierrez certainly wouldn't have put Dr. Holtzmacher on notice that the prison was required to treat erectile dysfunction because... No, the question is whether he's required to exercise individualized medical judgment about the condition as it may affect Mr. Glover. Well, I would argue that in this situation, where we're talking about whether it's a serious medical need at all, individualized medical judgment may not come into play. When there's an illness or a medical condition that is not a serious medical condition, there may be no requirement that there's treatment at all. Suppose we've got a different profile for an inmate who has this medical history. Suppose he's not a sex offender, he's somebody who committed bank fraud, 45 years old, three-year sentence. He has the surgery one year into the sentence. What do you think? Same analysis because this policy... Even if there are long-term effects on his life after he gets out of prison. Well, that, again, has not been established in the record and may go to whether there ultimately is a serious medical need found in this case. Do you think that might have had something to do with the outside doctor's prescription? Unclear from the record. Again, neither Dr. Murphy nor Dr. Wheatley ordered that treatment was mandatory in this case, just based on the facts alone. Dr. Murphy recommended the treatment. Dr. Wheatley, in the non-formulary request, said it was a non-urgent medical request. So neither doctor, just on the facts, indicated that it was mandatory treatment. Is that ordinarily done? Do they distinguish between recommendations and mandates to the prison? I believe if there was a medication that was life-or-death kind of medication, certainly they would indicate that in the orders. And in the non-formulary request, that is certainly not this case. But even if we assume that Mr. Glover could ultimately show a serious medical need based on these facts, that was not clearly established as a serious medical need requiring treatment at the time that Dr. Holtzmacher acted. Thank you. Thank you.  Mr. Reardon? Thank you, Your Honor. A couple of points. The defendants have pointed out that nothing in the prescription regarding Cialis said that this was a life-or-death medical condition. But that's precisely the test that Gutierrez says we don't apply.  We need something where a physician has said that treatment is mandatory. That's what we have here. Gutierrez makes clear that prescribing decisions are used as a conclusive proxy for mandatoriness of treatment. Now, asking this court to distinguish between treatments that doctors think are just important or appropriate and the ones that they think are mandatory runs headlong into the principle from Gutierrez that courts aren't supposed to be involved in making medical judgments like this. Gutierrez emphasizes deference to physicians precisely for this reason. I see that my time is up, Your Honor. Thank you. I don't want to cut you off. You may make a concluding remark. Okay. Thank you very much, Your Honor. Nothing that the defendants have said in their briefing or in their argument suggests that the law as established in Gutierrez some 20 years ago and has repeatedly affirmed since did not put Dr. Holzmacher on clear notice that his conduct in this case was unlawful. As a result, this court should remand to district court so that Mr. Glover may proceed against him as a defendant. Thank you. All right. Thank you, Mr. Reardon. Thank you, Ms. Keckhover. Mr. Reardon, I want to give you additional thanks from the court for accepting the appointment in this case. Thank you, Your Honor. Judge Blum. Judge Blum. Do you want to ask a question, Ilana? No. Might we take a short break, though? Yeah, sure. We can take a short break. Would you like ten minutes? Not that long, but thank you. All right. The court will stand and read.